Filed 12/1/15  P. v. Sardelli CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN ROBERT SARDELLI,<br><br>        Defendant and Appellant. | A144722<br><br>(Napa County<br>Super. Ct. No. CR171092) |

John Robert Sardelli (appellant) appeals from a judgment entered after he pleaded no contest to various domestic violence related crimes and the trial court sentenced him to five years in state prison.  He contends the trial court erred in imposing concurrent sentences for the offenses instead of staying the sentences under Penal Code, section 654.  We reject the contention and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 27, 2014, an information was filed charging appellant with inflicting corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a); count 1), battery with serious bodily injury (§ 243, subd. (d); count 2), making criminal threats (§ 422; count 3), and false imprisonment by violence (§ 236; count 4).  The information alleged as to count one that appellant inflicted great bodily injury in the commission of the offense (§ 12022.7, subd. (e)).

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

1

At the preliminary hearing,[2] Jane Doe testified that on June 2, 2014, she was living with appellant, who was her boyfriend at the time. They were listening to music and drinking in their living room, "[j]ust having a good time." At one point, appellant and Doe got into an argument when appellant said he wanted to go and buy more alcohol, and Doe told him no, and that "it wasn't a good idea." Doe got up and walked back to the bedroom, passing by the entryway by the front door. Appellant was in the entryway with a half-empty bottle of wine, which he smashed on the floor in anger. Doe told him she was not cleaning it up and was going to bed. She turned to walk into the bedroom and appellant called her name. When Doe turned back around, appellant pushed her with both hands on her chest, causing Doe to fall backwards into the bedroom and land on her hands and tailbone. She felt "shooting pains" and told appellant that she thought her wrist was broken.

As Doe tried to get up, appellant came into the bedroom, straddled her with his knees, grabbed her wrists, and asked her if they hurt. Doe responded yes. Appellant then began choking Doe by grabbing her throat firmly with both hands so that she could not breathe. He held on to her throat for about 20 seconds and asked her if she wanted to die. Doe was unable to push him off with her hands or kick him off with her legs; she felt helpless and afraid. She made a noise while trying to catch her breath, at which point appellant got up, called her a "cunt," and walked away.

A few minutes later, appellant came by to ask Doe if she was badly hurt; she responded that she was. When appellant tried to help her, Doe, who was still afraid, told him not to touch her. Shortly thereafter, the police knocked on the door. Appellant grabbed Doe's arm, directed her to the bedroom, and told her to pretend they were sleeping. Four officers entered the bedroom and asked why appellant and Doe had not answered the door; they responded they had been sleeping. An officer spoke with Doe separately in the dining room. Doe told the officer that she and appellant had been drinking and that the neighbors must have called the police because they were playing

---

[2]The parties stipulated that the factual basis of the plea would be based on the preliminary hearing transcript.

2

music too loudly. Doe denied they were fighting, and indicated she was fine. The officers left. Doe did not sleep much that night.

The next morning, Doe was in a lot of pain and went to the hospital for an examination and treatment. She was diagnosed with having suffered a fracture in her right wrist, a fractured tailbone, and sprains and bruising. There was also some contusion and bruising on her neck. After being released from the hospital, she still experienced pain in her hands, arm, back and tailbone, and had trouble sleeping. At the time of the preliminary hearing, she was wearing a cast, which she anticipated wearing for four to six weeks, and could not twist, pull, push, or pick up heavy things. She had to take time off work as a result of her injuries.

When Doe was interviewed at the hospital by police, she stated that when appellant was choking her, she did not feel he would actually kill her but that she was afraid for her safety given what he had already done to her. Appellant had been violent to Doe in the past when he was drinking. She testified about incidents in April and May 2014, when appellant punched her in the legs. In May 2014, appellant also threatened to throw her off the balcony, throw her head into the wall, or smash a brick in her face. At the preliminary hearing, she testified that she did not think appellant was capable of killing her, but that "in the moment," she "wasn't sure."

Appellant pleaded no contest to all four counts and admitted the great bodily injury allegation as to count one, in exchange for a court-indicated maximum of five years in state prison. The trial court sentenced him to five years in state prison, computed as follows: the low term of two years for corporal injury plus three years on the great bodily injury enhancement (count 1); the low term of two years for battery to run concurrent (count 2); the midterm of three years for criminal threats to run concurrent (count 3); and the midterm of two years for false imprisonment to run concurrent (count 4). The court also imposed restitution, fees, and fines, and awarded 318 days of presentence custody credits. Appellant filed a timely notice of appeal and requested and obtained a certificate of probable cause.

## DISCUSSION

Appellant contends the trial court erred in imposing concurrent sentences for battery in count two, criminal threats in count three, and false imprisonment in count four because his convictions for all four counts were based on the same underlying conduct and shared the same objective of controlling Doe. We disagree.

Section 654, subdivision (a), provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The purpose of the statute is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) The proscription applies to a course of conduct violating more than one statute, where the offenses were incident to one objective. (*People v. Martinez* (2005) 132 Cal.App.4th 531, 535.) Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)

Under California law, it is the defendant's intent and objective that determines whether the course of conduct is indivisible. Thus, if " ' "all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." ' " (*People v. Le* (2006) 136 Cal.App.4th 925, 931.) Moreover, because section 654 prohibits multiple punishments, not multiple convictions, its proscription extends to include both concurrent and consecutive sentences. (*In re Adams* (1975) 14 Cal.3d 629, 636.)

Section 654 does not apply when the evidence discloses that a defendant entertained multiple criminal objectives independent of each other. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1134.) In that case, "the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Ibid.*)

4

Once again, "[t]he divisibility of a course of conduct depends upon the intent and objective of the defendant." (*Id.* at p. 1135.)

The question of whether the acts of which a defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. (*People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657.) The trial court's findings are reviewed " 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

Where, as here, the trial court does not make an express finding under section 654,[3] an implied finding that the crimes were divisible must be upheld if supported by the evidence. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.) "If section 654, subdivision (a) requires that a sentence be stayed, then concurrent terms . . . may not be imposed." (*People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1239.) Where multiple punishment has been improperly imposed, the proper procedure is for the reviewing court to modify the sentence to stay imposition of the lesser term. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1248.)

Here, substantial evidence supports the trial court's implied finding that section 654 authorized separate punishment for the four offenses. Appellant asserts that his "primary objective" in committing the four offenses "appears to have been to control . . . Doe after she refused to allow him to use her bank card to purchase more wine." The evidence shows, however, that he had separate criminal intents in committing each of the offenses. First, in inflicting corporal injury to Doe resulting in great bodily injury, appellant acted with the intent to exert his dominance over her. He became angry

---

[3]Neither the prosecutor nor appellant argued the applicability of section 654 to this case, and the trial court did discuss it.

and smashed a bottle of wine on the floor when Doe told him he could not buy any more alcohol. When Doe responded that she was not going to clean the mess and was going to bed, appellant forcefully pushed her in order to exert dominance over her and show her that she should not defy him.

Second, as to count two, battery with serious bodily injury, appellant acted with the intent to cause physical harm to Doe. After pushing Doe down, he got on top of her and grabbed her wrist—which she said she thought was broken—then proceeded to choke her, holding her neck firmly for about 20 seconds, causing bruising on her neck and impeding her ability to breathe. Appellant's intent in choking Doe was to cause her harm.

Third, in making a criminal threat against Doe, appellant's intent was to threaten her life. While on top of her and strangling her, appellant asked Doe, "do you want to die tonight?" It can be reasonably inferred from the fact that he asked her if she wanted to die, while choking her firmly for 20 seconds, that he intended for Doe to take that statement as a threat.

Fourth, false imprisonment involves intentionally restraining, confining, or detaining someone by violence or menace, and causing the other person to stay or go somewhere against their will. (See CALJIC No. 1240.) When appellant got on top of Doe, straddled his legs around her, and proceeded to strangle her, he did so in a way that prevented her from getting up. She testified that she was unable to push him off with her hands or kick him off with her legs; she felt helpless and afraid. Based on these facts, there was substantial evidence that appellant's intent was to use physical force to prevent Doe from freely leaving.

Although appellant's acts, which led to the convictions on counts one through four, stemmed from one violent course of conduct, the evidence shows that appellant had multiple objectives in attacking Doe. Based on the evidence, the trial court could have reasonably determined that he had different objectives—exerting dominance over Doe, physically harming her, threatening her life, and preventing her from leaving—in committing the four crimes to which he pleaded no contest, and of which he was found

6

guilty.  In light of the different objectives he had in committing the four crimes, section 654 did not preclude multiple punishments.  Accordingly, the trial court did not err in sentencing appellant on all counts.

**DISPOSITION**

The judgment is affirmed.


_____
McGuiness, P.J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.